IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EASTCO INTERNATIONAL CORPORATION, | | |
| Plaintiff, | | No. 09 CV 5400 |
| v. | | |
| COYOTE LOGISTICS, LLC, a limited liability company, | | Judge Blanche M. Manning |
| Defendant. | | Magistrate Jeffrey Cole |

**DEFENDANT COYOTE LOGISTICS, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## I.      INTRODUCTION

This case arises out of a business transaction wherein Plaintiff Eastco International Corporation ("Eastco") arranged through Defendant Coyote Logistics, LLC ("Coyote"), a freight broker, for the transportation of a four cavity mold ("Mold").  Vitran Express ("Vitran"), the carrier of the Mold, subsequently lost the Mold in transit.  Eastco then sought, and received, full compensation from Vitran pursuant to the carrier's tariff contained in Eastco's Bill of Lading.  Eastco now seeks to impose liability on Coyote, the freight broker, to recover additional compensation in the form of the full replacement cost of the Mold.  Prior to the removal, the Circuit Court of Cook County (Municipal Division, First District) granted Coyote's original motion to dismiss directed against Eastco's one-count Verified Complaint for negligence. Eastco has now filed a First Amended Complaint ("Amended Complaint") wherein Eastco re-asserts its negligence claim and attempts to manufacture an additional claim against Coyote under the Carmack Amendment, 49 U.S.C. § 14706.

CHICAGO/#1973320

Eastco's claims remain legally deficient and unsupportable. As demonstrated herein, each claim fails to state a cause of action upon which relief may be granted and should be dismissed for the following reasons:

- The Carmack Amendment claim in Count I fails because Eastco's allegations do not and, in fact, cannot establish that Coyote acted as a carrier. Eastco's own allegations, including the exhibits attached to the Amended Complaint, establish that Coyote acted as a freight broker and, thus, cannot be held liable under the Carmack Amendment as a matter of law. In addition, Eastco expressly agreed to the limitation of liability in the carrier's tariff, for which it received full payment from the carrier. Eastco is, therefore, barred from any additional recovery under the Carmack Amendment even if there could possibly exist a question of fact as to whether Coyote acted as a responsible carrier.

- The negligence claim in Count II fails because Eastco does not and, again, cannot allege facts sufficient to establish that Coyote breached any duty owed to Eastco by virtue of its status as a freight broker. Eastco, moreover, had actual knowledge of the classification—set forth in its own Bill of Lading—that governed the shipment and expressly assumed responsibility for the classification selected.

## II.    FACTUAL BACKGROUND[1]

On July 7, 2008, Eastco employee, Rosa De Loera ("Ms. Loera"), contacted Coyote employee, Zachary Knobel ("Mr. Knobel"), to obtain a quote for the transportation of the Mold from Eastco's facility to Miniature Plastic Molding's ("Miniature") place of business. (Am. Compl. ¶ 9; Ex. B.) Mr. Knobel inquired whether Ms. Loera knew what class the Mold shipped at. (Id. ¶ 10; Ex. B.) After receiving a brief description of the cargo from Ms. Loera, Mr. Knobel quoted Eastco at "$110.00 all in." (Id. ¶¶ 11–12; Ex. B.) The quote to ship the Mold from Eastco's facility to Miniature at "$110.00 all in" was accepted by Eastco. (Id. ¶ 14.)

---

[1] The well-pled allegations of the Amended Complaint are taken as true solely for purposes of the Motion to Dismiss as required under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").

Eastco thereafter arranged with Coyote, as the freight broker, for the transportation of the Mold. (Am. Compl. ¶ 4.) On its Bill of Lading, Eastco listed Coyote in the space provided on the Bill of Lading for "Carrier's Name." (Id. ¶ 5; Ex. A.) The express terms of the Bill of Lading provide, in relevant part:

> . . . every service to be provided hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth. . . (2) in the applicable motor carrier classification or tariff if this is a motor carrier shipment. *Shipper hereby certifies that he is familiar with all of the terms and conditions of the said bill of lading including those on the back thereof, set forth in the classification or tariff which governs the transportation of this shipment* and the said terms and conditions are hereby agreed to by the Shipper and accepted for himself and his assigns.

(Id. Ex. A (emphasis added)).

The Mold was to be shipped from Eastco's facility in Oak Lawn, Illinois to Miniature's place of business in Ohio. (Am. Compl. ¶¶ 6–7.) Eastco alleges that it "sought to contract with and authorize Defendant to ship the Mold from Plaintiff's [f]acility to Miniature's place of business and . . . to contract with and authorize Defendant for the return shipment of the Mold to Plaintiff's [f]acility." (Id. ¶ 17.) Eastco further alleges that at no time did Coyote provide it with any broker agreement. (Id. ¶ 18.) According to the Amended Complaint, Coyote engaged the services of Vitran to ship the Mold from Eastco's facility to Miniature's place of business. (Id. ¶ 19.) Eastco alleges that it delivered the Mold to Coyote in good condition. (Id. ¶ 20.)[2]

Eastco later learned that the Mold did not reach Miniature's place of business. (Am. Compl. ¶ 21.) Eastco then made a claim to Vitran, as the carrier, for the lost Mold. (Id.) On or about July 29, 2008, Eastco received a letter from Vitran regarding the filing of its claim for the lost Mold with Vitran's insurance carrier. (Id. ¶ 22; Ex. C.) On or about August 13, 2008,

---

[2] This allegation is not supported by any specific facts and is inconsistent with the remaining allegations contained in Count I of the Amended Complaint. (See Am. Compl. ¶¶ 7, 9, 12, 14 & 19.)

Eastco also received information from Miniature listing the cost to replace the lost Mold at $19,000. (Id. ¶ 23; Ex. D.) This information was submitted to Vitran for the purpose of determining a replacement value for the Mold. (Id.) On or about August 14, 2008, Eastco received a letter from Richard Christopher, Manager of Loss Prevention for Vitran, declining the claim as filed and advising Eastco that, due to the carrier's tariff contained in Eastco's Bill of Lading, Vitran's liability was limited to $10.00 per pound or $700.00 total. (Id. ¶ 24; Ex. E.) On or around November 13, 2008, Eastco received a check from Vitran in the amount of $700.00. (Id. ¶ 25.) Eastco thus alleges that it is entitled to an additional $18,300 from Coyote. (Id. ¶ 26.)

## III.  LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. FED. R. CIV. P. 12(b)(6); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). In doing so, a court should accept as true all well-pleaded factual allegations and any reasonable inferences apparent on the face of the complaint. Tobin for Governor v. Ill. State Bd. of Elections, 268 F.3d 517, 521 (7th Cir. 2001). This does not mean that a court is required to accept conclusions of law or conclusions of fact not supported by allegations of specific facts. Id. In addition, a court may consider exhibits attached to the complaint when evaluating the legal sufficiency of the complaint and, to the extent there is a conflict between an exhibit and the allegations of the complaint, the exhibit controls. See, e.g., Massey v. Merrill Lynch & Co., 464 F.3d 642, 645 (7th Cir. 2006) (adding that a plaintiff "may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment"). Ultimately, dismissal is appropriate under Rule 12(b)(6) where the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic, 550 U.S. at 570; Griffin v. Sutton Ford, Inc., 452 F. Supp. 2d 842, 845 (N.D. Ill. 2006).

IV.     ARGUMENT

A.      **Eastco Has Not and Cannot State A Claim Against Coyote Under the Carmack Amendment**

In its Amended Complaint, Eastco fails to allege any specific or ultimate facts establishing that Coyote acted as a carrier subject to liability under the Carmack Amendment. To the contrary, the allegations and exhibits attached to the Amended Complaint establish that Eastco understood that Vitran was acting as the carrier, and that the Mold was tendered directly to Vitran by Eastco for transportation to Miniature's place of business. For this very reason, Eastco submitted its claim to Vitran, which Vitran then paid pursuant to the carrier's tariff contained in Eastco's Bill of Lading. Thus, even if there is somehow a question of material fact as to whether Coyote acted as a carrier or freight broker for purposes of the Carmack Amendment, the Carmack claim in Count I cannot survive because Eastco received full payment pursuant to the carrier's tariff.

1.      **The Amended Complaint and Supporting Exhibits Demonstrate That Coyote Acted as a Freight Broker**

Under the Carmack Amendment, 49 U.S.C. § 14706, carriers—not freight brokers—are liable for all losses relating to goods transported in interstate commerce. Lumbermens Mutual Casualty Co. v. GES Exposition Servs., Inc., 303 F. Supp. 2d 920, 921 (N.D. Ill. 2003); see also Custom Cartage, Inc. v. Motorola, Inc., No. 98 C 5182, 1999 WL 89563, at *3 (N.D. Ill. Feb. 16, 1999) (recognizing that the Carmack Amendment does not govern the liability of freight brokers with respect to lost or damaged goods).

Section 13102 of the Carmack Amendment defines "broker" as follows:

> The term "broker" means *a person, other than a motor carrier* or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement or otherwise as selling, providing, or *arranging for, transportation* by motor carrier for compensation.

49 U.S.C. § 13102(2) (emphasis added). Section 13102 further defines "motor carrier" as "a person providing commercial motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The Code of Federal Regulations also adds the following:

> *Broker means a person who, for compensation, arranges, or offers to arrange, the transportation of property* by an authorized motor carrier. *Motor carriers*, or persons who are employees or bona fide agents of carriers, *are not brokers* within the meaning of this section *when they* arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they *have accepted and legally bound themselves to transport*.

49 C.F.R. § 371.2(a) (2008) (emphasis added).

Eastco's Amended Complaint does not properly plead any facts demonstrating or otherwise reasonably inferring that Coyote acted as a carrier or that Eastco understood Coyote to be the carrier. To the contrary, the Amended Complaint makes clear that Vitran acted as the carrier and that, consistent therewith, Eastco correctly made a claim for the loss to Vitran shortly after it learned that the Mold never reached Miniature. (Am. Compl. ¶ 21.) Eastco's claim, moreover, was paid by Vitran, as the responsible carrier, pursuant to the carrier's tariff. (Id. ¶¶ 24–25; Ex. E.) In this respect, Eastco's own well-pled allegations demonstrate that Eastco fully understood Vitran was the carrier of the Mold.

Eastco's allegations also fail to establish that there was any understanding between the parties that Coyote was assuming responsibility for the delivery of the Mold. Rather, the allegations and documents attached to the Amended Complaint demonstrate that Coyote acted as a freight broker. CGU Int'l Ins., Plc. v. Keystone Lines Corp., No. C-02-3751 SC, 2004 WL 1047982, at *2 (N.D. Cal. May 5, 2004) (where there was no understanding that defendant assumed responsibility for the shipment and where defendant never took possession of the cargo, defendant was a broker for purposes of Carmack claim). Accordingly, Coyote is not subject to

liability under the Carmack Amendment as a matter of law and Count I of the Amended Complaint must be dismissed.

### 2. Eastco Expressly Agreed to the Limitation of Liability in the Carrier's Tariff and Is Barred From Further Recovery

The Carmack Amendment is not intended to protect shippers from themselves. Thus, even accepting as true Eastco's attempt to classify Coyote as the carrier of the Mold, Eastco is nevertheless barred from further recovery under the Carmack Amendment because, pursuant to the terms and conditions incorporated into its own Bill of Lading, Eastco expressly agreed to and accepted the limitation of liability contained in the carrier's tariff.

Under the Carmack Amendment, carriers may limit their liability to "a value declared by the shipper or to *an amount agreed upon between the shipper and the carrier*." Nieman Marcus Group, Inc. v. Quast Transfer, Inc., No. 98 C 3122, 1999 WL 436589, at *3 (N.D. Ill. June 21, 1999) (emphasis added); see also 49 U.S.C. § 14706(c)(1)(A). In this respect, the "parties' agreement may incorporate a limitation of liability contained in a tariff." Nieman Marcus, 1999 WL 436589, at *3. A shipper, moreover, is "presumed to have knowledge of the tariffs referenced in a bill of lading *that was prepared by the shipper*." Id.; see also Siren, Inc. v. Estes Express Lines, 249 F.3d 1268, 1274 (11th Cir. 2001) (holding that "when a shipper drafts a bill of lading, incorporating language which is universally understood throughout the motor carrier industry to limit the liability of the carrier, said shipper will be bound by the terms of the contract."); F.M. Mach. Co. v. R & L Carriers, Inc., No. 5:08 CV 2358, 2009 WL 1759577, at *4 (N.D. Ohio June 16, 2009) (charging shipper with knowledge of the limitation of liability in the carrier's tariff where shipper drafted the bill of lading and chose to incorporate the tariff).

In this case, Eastco prepared the standard form Bill of Lading.  (Am. Compl. ¶ 4.)  The Bill of Lading expressly incorporates the terms and conditions of "the classification or tariff which governs the transportation of the shipment."  (Id. Ex. A.)  Eastco expressly agreed to and accepted the terms and conditions set forth in the classification and tariff governing the shipment, including the limitation of liability in the carrier's tariff, and is charged with actual knowledge of the terms and conditions therein.  Nieman Marcus, 1999 WL 436589, at *3; see also White v. United Van Lines, Inc., 758 F. Supp. 1240, 1242 (N.D. Ill. 1991) ("[I]t is well established that a shipper is charged with knowledge" of the tariff provisions in a bill of lading.)

Eastco made a claim to Vitran for the lost Mold and received payment from Vitran pursuant to the terms of the tariff.  (Am. Compl. ¶¶ 21, 24–25).  Eastco cannot now ignore its express agreement to the limitation of liability *in its own Bill of Lading* and attempt to recover additional damages from Coyote under the Carmack Amendment.  See Siren, 249 F.3d at 1271 (it is not "proper or necessary to protect shippers from themselves.")  Count I of Eastco's Amended Complaint must therefore be dismissed for this additional reason.

## B.      **Eastco Does Not and Cannot Plead a Negligence Claim Against Coyote**

Eastco's amended claim for negligence does not contain any material changes from its previously dismissed negligence claim.  Nor does it cure any of the deficiencies addressed by the Circuit Court—namely, the failure to set forth any allegations demonstrating that Coyote breached any duty owed to Eastco by virtue of its status as a freight broker.[3]

---

[3] To the extent Eastco contends that Coyote is subject to liability as a carrier under the Carmack Amendment, then Eastco's negligence claim is preempted under the Carmack Amendment.  See, e.g., White 758 F. Supp. at 1243 ("[T]he Carmack Amendment preempts state law remedies for damages to goods."); York v. Day Transfer Co., 525 F. Supp. 2d 289, 298 (D.R.I. 2007) (finding Carmack Amendment completely preempted plaintiff's state law negligence claims).

### 1.     Eastco Fails to Allege That Coyote Breached a Legal Duty

Although courts have implicitly recognized that freight brokers may be liable for the value of lost or damaged goods outside of the Carmack Amendment, such claims are strictly limited to breach of contract actions where the broker expressly assumes a contractual obligation or negligence actions where the broker has a limited duty to arrange for transportation with a reputable carrier.  Custom Cartage, 1999 WL 89563, at *3 (citing cases); KLS Air Express, Inc. v. Cheetah Transp. LLC, No. S-05-2593, 2007 WL 2428294, at *6 (E.D. Cal. Aug. 23, 2007) ("In general, courts have held that a broker's duty to a shipper is limited to arranging for transportation with a reputable carrier.").

While Count II of the Amended Complaint attempts to state a claim for negligence, Eastco fails to allege that Coyote breached a duty of care in selecting the carrier.[4]  Rather, Eastco alleges only that Coyote had to a duty "to carefully inquire with Plaintiff the details needed to determine the appropriate Class for Plaintiff's shipment."  (Am. Compl. ¶ 27.)  As a freight broker, however, Coyote did not owe a legal duty to determine the appropriate classification. KLS Air Express, 2007 WL 2428294, at *6; see also Chubb Group of Ins. Companies v. H.A. Transp. Sys., Inc., 243 F. Supp. 2d 1064, 1071 (C.D. Cal. 2002) (granting summary judgment in favor of freight broker because the alleged duties did not relate to broker's activities "in selecting the carrier" and, therefore, "[were] not applicable to [broker]"); Prof'l Commc'n, Inc. v. Contract Freighters, Inc., 171 F. Supp. 2d 546, 552 (D. Md. 2001) (granting summary judgment in favor of broker on negligence claim where shipper failed to show that broker breached any duty in

---

[4] To state a negligence claim under Illinois law, a plaintiff must allege facts establishing the existence of a duty owed by the defendant, a breach of that duty, and damages proximately caused by such breach. Endencia v. ADT Sec. Servs., No. 08 C 4541, 2009 US Dist. LEXIS 86932, at *5 (N.D. Ill. Oct. 28, 2008) (citing Marshall v. Burger King Corp., 222 Ill. 2d 422, 430 (2006)).  Where there is no showing of a duty, recovery for negligence is precluded as a matter of law.  Fink v. DeClassis, 745 F. Supp. 509, 514 (N.D. Ill. 1990); see also Vesey v. Chicago Housing Authority, 145 Ill. 2d 404, 411 (1991).

relation to its selection of the carrier). Thus, Eastco's Amended Complaint fails to allege breach of any duty owed by Coyote as a matter of law and Count II must be dismissed.

> ### 2. Eastco Had Actual Knowledge of the Motor Carrier Classification and Cannot Disclaim Responsibility for the Classification Selected

As discussed above, Eastco expressly agreed to and accepted the terms and conditions of "the classification or tariff which governs the transportation of the shipment," including the limitation of liability contained therein. (Am. Compl. Ex. A.) Indeed, as the Bill of Lading makes clear, Eastco had actual knowledge of the motor carrier classification that governed the shipment and, by agreeing to and accepting that classification, assumed responsibility for the classification selected. Nieman Marcus, 1999 WL 436589, at *4 (finding that when "shipper itself prepared the bill of lading expressly incorporating the tariff and expressly certifying that it was aware of the terms of the tariff," the shipper was "charged with knowledge of the applicable tariff"); see also State Farm Fire & Casualty Co. v. United Van Lines, Inc., 825 F. Supp. 896, 901 (N.D. Cal. 1993) (shipper charged with knowledge of the terms and conditions in bill of lading despite not having signed it where shippers received copy of bill of lading and were otherwise on notice of its terms). Therefore, as a matter of law, Eastco is charged with actual knowledge of the shipping classification and cannot disclaim such knowledge or plead that Coyote somehow assumed responsibility for providing Eastco with the appropriate classification. Accordingly, Eastco cannot establish that Coyote breached any duty and Count II of the Amended Complaint must be dismissed.

-11-

## V.     CONCLUSION

For all of the foregoing reasons, Coyote respectfully requests this Court enter an order:

(1) granting its Motion to Dismiss; (2) dismissing the First Amended Complaint with prejudice;

and (3) providing such other and further relief as the Court deems appropriate.

DATED: September 8, 2009

Anthony J. Ashley, #6209519
Rebecca L. Dandy, #6293585
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601-1003
T: (312) 609-7500
F: (312) 609-5005

Respectfully submitted,

**COYOTE LOGISTICS LLC**

By:   /s/ Anthony J. Ashley
      One of Its Attorneys

CHICAGO/#1973320
-11-