IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EASTCO INTERNATIONAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> COYOTE LOGISTICS, LLC, a limited liability company, <br><br> Defendant. <br> ` | No. 09 CV 5400 <br><br> Judge Blanche M. Manning <br><br> Magistrate Jeffrey Cole |

**DEFENDANT COYOTE LOGISTICS, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO COUNT I OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

As and for its Answer and Affirmative Defenses to Count I of Plaintiff Eastco International Corporation's ("Eastco") First Amended Complaint, Defendant Coyote Logistics, LLC ("Coyote") states as follows:

**COUNT I**
**CARMACK AMENDMENT 49 U.S.C. § 14706**

**ALLEGATION NO. 1:**

Plaintiff is a foreign corporation with its principal place of business in Oak Lawn, Cook County, Illinois ("Facility"), and is duly authorized to do business in the State of Illinois.

**ANSWER:**

Coyote is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and, therefore, denies the same.

**ALLEGATION NO. 2:**

Plaintiff is in the business of selling lighting fixtures and other related products.

**ANSWER:**

Coyote is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and, therefore, denies the same.

**ALLEGATION NO. 3:**

Upon information and belief, Defendant is doing business in the State of Illinois as Coyote Logistics, LLC located at 191 E. Deerpath Road, Lake Forest, Illinois.

**ANSWER:**

Coyote admits the allegations in Paragraph 3.

**ALLEGATION NO. 4:**

On or about July 7, 2008 Plaintiff arranged with Defendant, through the use of a Straight Bill of Lading-Short Form ("Bill of Lading") dated July 7, 2008, for the transportation of one (1) four cavity mold ("Mold") to Miniature Plastic Molding ("Miniature"). The Bill of Lading is attached hereto as Exhibit A.

**ANSWER:**

Coyote admits that Exhibit A purports to be a Short Form - Bill of Lading dated July 7, 2008 for the transportation of the Mold to Miniature. Coyote denies the remaining allegations in Paragraph 4.

**ALLEGATION NO. 5:**

Defendant is listed as the carrier in the space provided on the Bill of Lading for "Carrier's Name".

**ANSWER:**

Coyote admits that it is identified in the space provided on the Bill of Lading for "Carrier's Name," but denies that it placed its name in that space or authorized anyone else to do so. Coyote denies that it acted as carrier and further denies any implication that its being identified in the space provided for "Carrier's Name" indicates that it acted as carrier. Coyote denies the remaining allegations in Paragraph 5.

- 2 -

**ALLEGATION NO. 6:**

The Mold required evaluation, which Miniature was to complete once the Mold was received at Miniature's place of business in Solon, Ohio.

**ANSWER:**

Coyote is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and, therefore, denies the same.

**ALLEGATION NO. 7:**

The Mold was to be shipped from Plaintiff's Facility to Miniature's place of business in Solon, Ohio.

**ANSWER:**

Coyote admits the allegations in Paragraph 7.

**ALLEGATION NO. 8:**

The Mold was to be returned to Plaintiff's Facility from Miniature's place of business after the completion of the evaluation of the Mold.

**ANSWER:**

Coyote admits that the Mold was to be returned to Eastco from Miniature's place of business but is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 8 and, therefore, denies the same.

**ALLEGATION NO. 9:**

On July 7, 2008 Plaintiff, through its employee Rosa De Loera ("Ms. Loera"), via e-mail correspondence, contacted Defendant's employee, Zachary Knobel, for the purpose of obtaining a quote for the transportation of the Mold from Plaintiff's Facility to Miniature's place of business.

**ANSWER:**

Coyote admits that Ms. Loera sent an e-mail to Coyote employee Zachary Knobel on July 7, 2008, and that such correspondence is attached to the First Amended Complaint as Exhibit B.

- 3 -

Coyote is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 9 and, therefore, denies the same.

**ALLEGATION NO. 10:**

Defendant replied to the initial request for a quote by inquiring whether Ms. Loera knew what class the Mold ships at.

**ANSWER:**

Coyote admits that Mr. Knobel responded to Mr. Loera's e-mail, and that such correspondence is attached to the First Amended Complaint as Exhibit B. Coyote denies the remaining allegations in Paragraph 10.

**ALLEGATION NO. 11:**

Ms. Loera did not know, but did provide a brief description of the cargo to be transported, including the fact that the cargo was a mold used to produce plastic parts.

**ANSWER:**

Coyote admits that Ms. Loera sent an e-mail back to Mr. Knobel, and that such correspondence is attached to the First Amended Complaint as Exhibit B. Coyote further states that Eastco employee, Cheryl Kempf, previously advised Mr. Knobel that the Mold ships at class 100. Coyote is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 11 and, therefore, denies the same.

**ALLEGATION NO. 12:**

Defendant, after learning the limited details of the shipment and without further inquiry, then quoted a price of "$110.00 all in" for the transportation of the Mold from Plaintiff's Facility to Miniature's place of business in Solon, Ohio. E-mail correspondence attached hereto as Exhibit B.

**ANSWER:**

Coyote admits that Mr. Knobel responded to Mr. Loera's e-mail and quoted a price of $110.00 all in, and that such correspondence is attached to the First Amended Complaint as

CHICAGO/#2019536

Exhibit B. Coyote further admits that Exhibit B purports to be copies of the e-mail correspondence referenced in Paragraphs 9 through 12. Coyote denies the remaining allegations in Paragraph 12.

**ALLEGATION NO. 13:**

Defendant made no further attempts to ascertain the value of the Mold to be shipped, including other details that would provide for the appropriate motor carrier classification ("Class").

**ANSWER:**

Coyote denies the allegations in Paragraph 13.

**ALLEGATION NO. 14:**

Plaintiff accepted the offer to ship the Mold between the Plaintiff's Facility and Miniature's place of business for a cost of $110.00.

**ANSWER:**

Coyote admits that the parties agreed to the price of $110.00 for Coyote to arrange for the shipment of the Mold through a carrier and for such carrier to then ship the Mold from Eastco's facility to Miniature's place of business. Coyote denies the remaining allegations in Paragraph 14.

**ALLEGATION NO. 15:**

Plaintiff then inquired with Defendant as to whether the previously quoted cost for transportation would be applicable to the return trip from Miniature's place of business in Solon, Ohio to Plaintiff's Facility.

**ANSWER:**

Coyote admits that Ms. Loera sent an e-mail to Mr. Knobel inquiring into whether the price of $110.00 would apply to the return trip, and that such correspondence is attached to the First Amended Complaint as Exhibit B. Coyote denies the remaining allegations in Paragraph 15.

CHICAGO/#2019536

**ALLEGATION NO. 16:**

Defendant responded by confirming the cost of $110.00 would be applicable to the return trip from Miniature's place of business. See Exhibit B.

**ANSWER:**

Coyote admits that Mr. Knobel responded to Mr. Loera's e-mail and confirmed that the $110.00 price applied to the same services in connection with the return trip, and that such correspondence is attached to the First Amended Complaint as Exhibit B. Coyote denies the remaining allegations in Paragraph 16.

**ALLEGATION NO. 17:**

At all relevant times, Plaintiff sought to contract with and authorize Defendant to ship the Mold from Plaintiff's Facility to Miniature's place of business and after the completion of any evaluation of the Mold performed by Miniature, the Plaintiff sought to contract with and authorize Defendant for the return shipment of the Mold to Plaintiff's Facility. See Exhibit B.

**ANSWER:**

Coyote is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and, therefore, denies the same.

**ALLEGATION NO. 18:**

At no time did Defendant provide Plaintiff with any broker agreement outlining its role, function and liability as a broker.

**ANSWER:**

Coyote admits that it did not provide Eastco with any written freight brokerage agreement but denies that it was required to do so. Coyote denies the remaining allegations in Paragraph 18.

**ALLEGATION NO. 19:**

On information and belief, Defendant engaged the services of Vitran Express ("Vitran") to complete the transportation of the Mold from Plaintiff's facility to Miniature's place of business.

- 6 -

**ANSWER:**

Coyote admits that, in its limited capacity as the freight broker, Coyote arranged with Vitran to serve as the carrier and transport the Mold from Plaintiff's facility to Miniature's place of business.

**ALLEGATION NO. 20:**

Plaintiff delivered the Mold to Defendant in good condition.

**ANSWER:**

Coyote denies the allegations in Paragraph 20.

**ALLEGATION NO. 21:**

Sometime after the date of the Bill of Lading, Plaintiff learned that the Mold did not reach Miniature's place of business. Thereafter, Plaintiff made claim to Vitran for the lost Mold.

**ANSWER:**

Coyote admits that Eastco made a claim to Vitran for the lost Mold. Coyote is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 and, therefore, denies the same.

**ALLEGATION NO. 22:**

On or about July 29, 2008 Plaintiff received a letter from Vitran regarding the filing of its claim for the lost Mold with Vitran's insurance carrier. See Exhibit C.

**ANSWER:**

Coyote admits that Exhibit C purports to be a letter from Vitran to Eastco dated July 29, 2008 regarding Eastco's filing of a claim for the lost Mold with Vitran's insurance carrier. Coyote is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 and, therefore, denies the same.

CHICAGO/#2019536

**ALLEGATION NO. 23:**

On or about August 13, 2008 Plaintiff received information from Miniature listing the cost to replace the lost Mold at $19,000. The information was submitted to Vitran Express for the purpose of determining a replacement value for the lost Mold and related insurance claim. Replacement Cost Estimate attached hereto as Exhibit D.

**ANSWER:**

Coyote admits that Exhibit D purports to be a quote from Miniature to Eastco indicating that the cost to Eastco for a certain 4 cavity mold would be $19,000. Coyote is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 23 and, therefore, denies the same.

**ALLEGATION NO. 24:**

On or about August 14, 2008 Plaintiff received a letter from Mr. Richard Christopher, Manager of Loss Prevention for Vitran, declining the claim as filed for the lost Mold and advising that due to the carrier's tariff, Vitran's liability was limited to $10.00 per pound or $700.00 in total. Letter declining claim attached hereto as Exhibit E.

**ANSWER:**

Coyote admits that Exhibit E purports to be a letter from Richard Christopher, of Vitran, to Eastco dated August 14, 2008. Answering further, Coyote states that the letter speaks for itself and Coyote denies any characterizations of the letter to the contrary. Coyote denies the remaining allegations in Paragraph 24.

**ALLEGATION NO. 25:**

On or around November 13, 2008 Plaintiff received a check in the amount $700.00 from Vitran.

**ANSWER:**

Coyote is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and, therefore, denies the same.

- 8 -

**ALLEGATION NO. 26:**

Based on the foregoing, Defendant's actions have caused Plaintiff to be damaged in the amount of $18,300.00.  This amount can be broken down as follows:

| | |
|---|---|
| Cost to replace Mold | $19,000.00 |
| Less:  Amount received from Vitran | $    700.00 |
| **Total** | **$18,300.00** |

**ANSWER:**

Coyote denies the allegations in Paragraph 26.

## COUNT II
## NEGLIGENCE

**ALLEGATION NO. 1-26:**

Plaintiff realleges and incorporates paragraphs 1 through 26 of Count I of this First Amended Complaint as paragraphs 1 through 26 of this Count II.

**ANSWER:**

Count II of the First Amended Complaint has been dismissed and, therefore, no answer is

required to this paragraph.

**ALLEGATION NO. 27:**

Defendant, once inquiring as to the applicable Class, formed a duty to carefully inquire with Plaintiff the details needed to determine the appropriate Class for Plaintiff's shipment.

**ANSWER:**

Count II of the First Amended Complaint has been dismissed and, therefore, no answer is

required to this paragraph.

**ALLEGATION NO. 28:**

Defendant, after inquiring as to the applicable Class, breached the duty formed between the two parties by failing to inquire with Plaintiff the requisite details to determine the appropriate Class.

- 9 -

**ANSWER:**

Count II of the First Amended Complaint has been dismissed and, therefore, no answer is required to this paragraph.

**ALLEGATION NO. 29:**

Defendant's failure to ascertain from Plaintiff the details needed to determine the appropriate Class for Plaintiff's shipment and further failure to provide Plaintiff with the appropriate Class used in the quoting of the cost of transportation caused Plaintiff to be limited in its recovery from Vitran Express to $700.00.

**ANSWER:**

Count II of the First Amended Complaint has been dismissed and, therefore, no answer is required to this paragraph.

**ALLEGATION NO. 30:**

Based on the foregoing, Defendant's actions have proximately caused Plaintiff to be damaged in the amount of $18,300.00. This amount can be broken down as follows:

| | |
|---|---|
| Cost to replace Mold | $19,000.00 |
| Less: Amount received from Vitran | $    700.00 |
| **Total** | **$18,300.00** |

**ANSWER:**

Count II of the First Amended Complaint has been dismissed and, therefore, no answer is required to this paragraph.

<b><u>AFFIRMATIVE DEFENSES</u></b>

As and for its affirmative defenses to Count I of the First Amended Complaint, Coyote states as follows without waiver of Eastco's obligation to plead and prove each and every element of its claim:

<b>First Affirmative Defense</b>

Eastco's Carmack Amendment claim is barred in whole or in part because the First Amended Complaint fails to state any cause of action upon which relief can be granted.

- 10 -

**Second Affirmative Defense**

Eastco's Carmack Amendment claim is barred in whole or in part because Coyote acted as a freight broker—not as a carrier—and, therefore, Coyote cannot be held liable for the loss of the Mold under the Carmack Amendment.

**Third Affirmative Defense**

Eastco's Carmack Amendment claim is barred in whole or in part because Eastco's right to recovery, if any, is limited by the terms and conditions of the governing bill of lading, including but not limited to the carrier's tariff incorporated therein.

**Fourth Affirmative Defense**

Eastco's Carmack Amendment claim is barred in whole or in part because Eastco has received the full amount it is entitled to recover for the loss of the Mold pursuant to the carrier's tariff and is thus barred from any additional or further recovery from Coyote.

**Fifth Affirmative Defense**

Eastco's Carmack Amendment claim is barred in whole or in part because Eastco's right to recovery, if any, is limited under the Carmack Amendment to actual loss and Eastco is not entitled to recover the replacement cost for the Mold.

**Sixth Affirmative Defense**

Eastco's Carmack Amendment claim is barred in whole or in part because Eastco failed to mitigate its damages, if any, allegedly caused by Coyote.

**Seventh Affirmative Defense**

Eastco's Carmack Amendment claim is barred in whole or in part because Eastco's damages, if any, were caused by its own acts and/or omissions.

**Eighth Affirmative Defense**

Eastco's Carmack Amendment claim is barred in whole or in part because Eastco's damages, if any, were caused by the acts and/or omissions of third parties not under Coyote's control.

**Ninth Affirmative Defense**

Eastco's Carmack Amendment claim is barred to the extent Eastco did not tender a written notice of claim to Coyote within the prescribed time.

CHICAGO/#2019536

- 12 -

**Tenth Affirmative Defense**

In the event that the Mold was shipped subject to any statutory or contractual limitations of liability, either specifically agreed to or contained in any applicable tariffs and/or governing publications, Eastco may not recover in excess of such limitations.


DATED: January 11, 2010

Anthony J. Ashley, #6209519
Rebecca L. Dandy, #6293585
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601-1003
T: (312) 609-7500
F: (312) 609-5005

Respectfully submitted,

**COYOTE LOGISTICS, LLC**

By: /s/ Anthony J. Ashley_____
      One of Its Attorneys

- 12 -

- 13 -

## CERTIFICATE OF SERVICE

The undersigned certifies that true and correct copies of the foregoing **Defendant Coyote Logistics, LLC's Answer and Affirmative Defenses to Count I of Plaintiff's First Amended Complaint** were served on

Edmund P. Burke
Michael R. Curtis
Burke & White, PC
5330 Main Street, Suite 200
Downers Grove, IL 60515

by electronic means on January 11, 2010.

/s/ Anthony J. Ashley

- 13 -

CHICAGO/#2019536